**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**


**DAVID WHEELER**,

        **Plaintiff,**

**v.**                                                    **Civil Action No. 2:10cv37
                                                         (Judge Maxwell)**

**LT. AARON SIMONTON, PAUL KUHN,
JASON KUHN, JOSH HENTHORNE,
ROBERT VANMETER AND JOHN DOE,[1]**

        **Defendants.**

## OPINION/REPORT AND RECOMMENDATION

### I.  Procedural History

The *pro se* plaintiff initiated a 42 U.S.C. § 1983 civil rights action on March 18, 2010.

[Dckt.1]  On April 12, 2010, the undersigned granted the plaintiff permission to  proceed as pauper

[Dckt. 11] and a preliminary review of the complaint was conducted shortly thereafter [Dckt. 15].

After service of process was perfected upon the defendants, they filed a motion to dismiss

the complaint on May 20, 2010.  [Dckt. 24]  Because the plaintiff is proceeding without counsel,  a

Roseboro Notice was issued on June 1, 2010, advising the plaintiff of his right to file a response to

the defendants' motion to dismiss [Dckt. 26].

---

[1]From the information provided by the defendants, it appears that the plaintiff misidentified
the names of the defendants "C/O II Koontz (father)" and "C/O II Koontz (son)" in his complaint.
The actual names of those defendants are Paul Kuhn and Jason Kuhn.  In addition, the defendants
have identified that Lt. Simonton's first name is Aaron and C/O Van Meter's first name is Robert.
The Clerk is directed to make the appropriate changes to the docket.  It is unclear, however, whether
defendant John Doe is Case Manager Wardon Rustemeyer, who has filed an affidavit admitting that
he was in the vicinity of the plaintiff's cell during the events in question and that he witnessed the
plaintiff's "altercation" with defendant Paul Kuhn.

On June 18, 2010, the plaintiff filed a motion for an extension of time to respond to the defendants' motion to dismiss [Dckt. 28], and a motion for discovery [Dckt. 29]. The defendants filed responses to the plaintiff's motions on June 25, 2010 [Dckt. 30 & 31], and a motion for protective order on June 28, 2010 [Dckt. 32].

On July 1, 2010, the plaintiff filed a response to the defendants' motion to dismiss [Dckt. 33]. The defendants filed their reply on July 12, 2010 [Dckt. 35].

## II. Contentions of the Parties

### A. The Complaint

In the complaint, the plaintiff alleges that while at St. Mary's Correctional Center, the defendants used "excessive or malicious force" against him [Dckt. 1 at 4]. Specifically, the plaintiff asserts that the defendants slammed his head off the wall several times. *Id.* He further asserts that because of his injuries, he was transported to an outside hospital where he was diagnosed with a strained muscle in his back and a separated shoulder. *Id.* As relief, the plaintiff seeks:

1.  nominal damages of $1.00 in recognition of the violation of his civil rights;

2.  punitive damages of $1,000,000.00 from each defendant;

3.  unspecified compensatory damages for mental anguish and personal injury;

4.  legal fees;

5.  full payment of current and future medical expenses; and

6.  injunctive relief.

*Id.* at 6.

### B. The Defendant's Motion to Dismiss

In their motion to dismiss, the defendants request the dismissal of the plaintiff's complaint

for the following reasons:

1. the plaintiff suffered only *de minimis* injuries;

2. the plaintiff's claims against Lt. Simonton, Officer Jason Kuhn, Officer Robert VanMeter, and Officer Josh Henthorne should be dismissed because the plaintiff cannot specify which of them actually placed their hands on him; and

3. the defendants are entitled to qualified immunity due to the fact that they were acting as government officials, performing discretionary functions and they used reasonable force while so acting.

See [Dckt. 24].

In support of their motion, the defendants assert that as a part of a routine contraband search, some minor contraband was found in the plaintiff's cell [Dckt. 25 at1]. The defendants assert that when the plaintiff was returned to his cell after completion of the search, he began cursing about the placement of his shower shoes on his sheets. *Id.* Because of the plaintiff's "verbal outburst and escalating behavior," Correctional Officer Paul Kuhn escorted the plaintiff into the hallway and instructed him to stand against the wall. *Id.* The plaintiff not only resisted Officer Kuhn's instructions, but also pushed the officer. *Id.* The defendants also assert that the plaintiff "lifted his foot" when told to stand against the wall, a maneuver that can be the start of a kick, flight or weight shift to gain physical advantage during an altercation. *Id.* The defendants contend that the plaintiff has admitted that Officer Paul Kuhn is the only officer who placed his hands on the plaintiff. *Id.* at 2. Moreover, the defendants assert that Officer Kuhn used only the most minimal force necessary to bring an unruly inmate into compliance. *Id.*

The defendants assert that several members of correctional staff witnessed the incident and

can attest that it occurred in mere seconds.  *Id.*  The witnesses to the incident are Lt. Aaron Simonton, Correctional Officer Josh Henthorne and Case Manager Wardon Rustemeyer.  *Id.*  These witnesses will also attest to the fact that the plaintiff was noncompliant and unruly and that he was never subjected to excessive force.  *Id.*

As to the plaintiff's alleged injuries, the defendants assert that the incident occurred at approximately 10:00 a.m.  *Id.*  At 6:00 p.m., the plaintiff reported the incident to Captain Anderson and requested medical treatment.  *Id.*  The plaintiff was examined by a nurse who noted only some minor superficial injuries.  *Id.*  The plaintiff left the medical unit, but returned again a little more than an hour later.  *Id.*  At that time, the plaintiff had additional injuries, such as redness on his cheek and complaints of a shoulder injury.  *Id.*  Taking every precaution, the on-call doctor instructed the nurse to have the plaintiff transferred to an outside hospital for an evaluation.  *Id.*  The outside hospital treated the plaintiff for a sprained shoulder, sprained lower back muscles and some minor abrasions, but no serious injury.[2]  *Id.*

An institutional investigation was conducted regarding the incident.  *Id.*  The investigation was performed by Investigator II Mike Bauso.  *Id.*  Investigator Bauso spoke with the witnesses, including both staff and inmates, and determined that the plaintiff was not subjected to excessive force nor assaulted.  *Id.*

Based on this factual background, the defendants assert that the plaintiff's complaint should be dismissed.  First, the defendants assert that "[a]bsent most extraordinary circumstances, an individual who suffers only *de minimis* injuries cannot prevail on an Eighth Amendment excessive

---

[2]The plaintiff did not stay in the hospital and he was given only Ibuprofen for his injuries. [Dckt. 25 at 3]

force claim." *Id.* at 3 (citing <u>Riley v. Dorton</u>, 115 F.3d 1159 (4th Cir. 1997); <u>Norman v. Taylor</u>, 25 F.3d 1259 (4th Cir. 1996) (internal quotations omitted)). In this case, the defendants contend that because the plaintiff cannot show more than a *de minimis* injury or that extraordinary circumstances exist, he cannot prevail on his claim of excessive force. *Id.* To support their conclusion, the defendants note that when the plaintiff first saw medical staff hours after the incident occurred, he had only minor abrasions and no real complaints of pain. *Id.* at 3-4. And even though the plaintiff complained of shoulder pain and had an additional abrasion under his right eye about an hour later, the defendants suggest that the plaintiff may have injured himself after his first exam by the nurse. *Id.* at 4. Additionally, the defendants note that after his second visit to the medical unit, the plaintiff was taken to an outside hospital for further evaluation. *Id.* The defendants assert that the plaintiff never complained of pain on the way to the hospital or in the waiting room, he was not kept at the hospital for longer than it took for him to be evaluated, he was diagnosed with only minor injuries and that he received only Ibuprofen for his injuries. *Id.*

The defendants then note that while it may be conceivable that the plaintiff received such minor injuries as a result of excessive force, it is not plausible. *Id.* They assert that the plaintiff contends that his head was slammed against the wall several times, he was pushed to the ground and beaten, and that his extremities were twisted. *Id.* The defendants concede that the assault as alleged by the plaintiff would have been brutal. *Id.* at 5. Accepting those allegations as true, the defendants assert that it is just not plausible that the plaintiff would wait eight hours to seek medical attention and only suffer minor injuries after such a brutal attack. *Id.* The defendants therefore assert that any force used by Officer Kuhn was only that reasonably necessary to gain control of an unruly and aggressive inmate and was not excessive. *Id.*

Next, the defendants contend that the plaintiff's claims against Lt. Simonton, Officer Jason Kuhn, Officer VanMeter and Officer Henthorne should be dismissed because the plaintiff has not alleged that any of those defendants were personally involved in the alleged use of excessive force. *Id.* at 6. The defendants assert that in his complaint, with the exception of Officer Paul Kuhn, the plaintiff has stated that he cannot be sure which defendants actually placed their hands on him during the incident. *Id.* Moreover, defendants Simonton, Jason Kuhn, VanMeter and Henthorne all deny any involvement in the incident. *Id.* Thus, the defendants assert that the plaintiff has failed to state any claim against these officers for which relief may be granted. *Id.* The defendants assert that the plaintiff is "simply naming officers without any evidence to substantiate his claims." *Id.*

Last, the defendants assert that they are entitled to qualified immunity. *Id.* at 7. They assert that at the time of the alleged incident, they were involved in a contraband search as a part of their normal duties. *Id.* Officer Paul Kuhn believed the plaintiff was acting unruly and acted only to subdue him. *Id.* The defendants assert that Officer Kuhn applied only that force which was reasonably necessary to contain the situation. *Id.* The defendants assert that Officer Kuhn acted as any reasonable officer would have under the circumstances and that they are therefore entitled to qualified immunity. *Id.*

**C.**     **The Plaintiff's Motion Requesting an Extension of Time**

The plaintiff requests an extension of time to respond to the defendant's Motion to Dismiss on the grounds that he is unable to timely file a response to the motion. [Dckt. 28 at 1] In support of his motion, the plaintiff first asserts that he was transferred between facilities during the period in which he was to respond. *Id.* He also notes that he had difficulty securing legal assistance at the new facility. *Id.* After securing such assistance, the plaintiff was informed that he may be entitled

to certain discovery and he has filed a motion for such discovery. *Id.* The plaintiff believes he needs the requested discovery to properly respond to the defendant's motion to dismiss. *Id.* at 2.

**D.**     **The Plaintiff's Motion Requesting Discovery**

In his motion for discovery, the plaintiff requests:

1.     complete transcripts of any and all recorded statements obtained as a result of the DOC's investigation into the alleged assault;

2.     copies of written statements or affidavits obtained during the DOC's investigation; and

3.     complete copies of his DOC medical records.

[Dckt. 29 at 1].[3]

The plaintiff also reserves the right for further discovery. *Id.* at 2.

**E.**     **The Defendants' Responses**

1.     <u>Response to Plaintiff's Request for Extension of Time</u>

In response to the plaintiff's motion for an extension of time, the defendants assert that the plaintiff is not entitled to discovery before he responds to their motion to dismiss because a motion to dismiss is based upon the allegations of the complaint, not discovery answers. [Dckt. 31 at 1] Moreover, the defendants assert that they are entitled to a ruling on their motion to dismiss prior to commencing discovery. *Id.* Thus, discovery is not an appropriate reason to extend the plaintiff's time to file a response. *Id.*

---

[3] The court notes that in their subsequent "Memorandum and Motion to Dismiss," the defendants have included several relevant affidavits as well as what appears to be a transcript of a post-incident interview with the plaintiff. However, although the defendants have included the affidavit of the institutional nurse who treated the plaintiff, they have provided none of the plaintiff's relevant medical records.

In addition, the defendants assert that the plaintiff's transfer and lack of legal assistance is not a reason to delay his response time. *Id.* at 2. They assert that even though the plaintiff is proceeding *pro se*, his access to legal assistance is irrelevant and that he simply is not entitled to an extension of time so "somebody else can write a response for him." *Id.* The defendants also note that the plaintiff has had the time to file multiple pleadings and other motions and therefore had the time to write a response. *Id.* Thus, the defendants request that the plaintiff's motion be denied. *Id.*

  2. <u>Response to Plaintiff's Request for Discovery</u>

In their response to the plaintiff's request for discovery, the defendants assert that there have been no requests for discovery in this case and if the plaintiff's motion is a motion to compel, it must be denied because it violates Rule 37 of the Federal Rules of Civil Procedure. [Dckt. 30 at 1-2] In addition, the defendants assert that if the plaintiff's motion is a request for permission to conduct discovery, it should be dismissed as premature because the Court has not yet commenced discovery in this matter. *Id.* at 2. Moreover, the defendants again note that they have a pending motion to dismiss which should be ruled on prior to the commencement of discovery. *Id.*

**F.** **<u>The Defendants' Motion for Protective Order</u>**

In their alternative motion for a protective order, the defendants assert that the Court has wide discretion in controlling discovery. [Dckt. 32 at 2] Given the status of this case, a pending motion to dismiss and no scheduling order, the defendants assert that they would be prejudiced if forced to participate in discovery at this time. *Id.* Specifically, the defendants note the time and expense which they may incur if the plaintiff was permitted to conduct discovery at this time. *Id.* at 3. Therefore, the defendants ask the Court to issue a protective order against discovery. *Id.*

**G.** **<u>The Plaintiff's Response to the Defendant's Motion to Dismiss</u>**

In response to the defendants' motion to dismiss, the plaintiff provides a more detailed account of his version of the events leading to the filing of this complaint. He asserts that while the defendants were conducting a contraband search ("shakedown") of his cell on October 23, 2009, the plaintiff noticed that the defendants had placed his shower shoes on his pillow case. [Dckt. 33 at 1] The plaintiff commented about this to one of his cell mates. *Id.* Defendant Paul Kuhn overheard this comment and responded by grabbing the plaintiff by the arm and escorting him from the cell. *Id.* In the hallway, the other defendants surrounded the plaintiff and began to verbally and physically assault him. *Id.* The plaintiff suggests that the "attack" was unprovoked as he did not resist, fail to comply or curse at the defendants. *Id.* at 2. The plaintiff asserts that the attack was unnecessary and unjustified. *Id.*

As a result of the assault, the plaintiff alleges that he suffered injuries to his back, shoulder and forehead. *Id.* The assault, and resulting injuries, were observed by other inmates, at least one of whom gave a statement to the institutional investigator. *Id.* The plaintiff asserts, however, that he has been unable to obtain affidavits from those inmates due to his transfer to another facility.

The plaintiff asserts that he grieved the assault in the West Virginia Division of Corrections administrative remedy program with no satisfactory result. *Id.* Thus, he then initiated this case in federal court. *Id.*

In support of his complaint, the plaintiff asserts that in his complaint and supporting affidavits, he clearly alleges that he was assaulted and injured in violation of the Eighth Amendment's prohibition against cruel and unusual punishment. *Id.* at 3. The plaintiff asserts that the defendants "inflicted unnecessary and wanton pain and suffering" on him without justification. *Id.* The plaintiff further asserts that there are numerous issues of material fact that remain to be

resolved and that neither the granting of a motion to dismiss nor motion for summary judgment is appropriate at this time.  *Id.* at 3-4.  The plaintiff therefore asks the Court to deny the defendants' motion to dismiss.  *Id.* at 4.

### III.  Standard of Review

#### A.  Motion to Dismiss

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)).  In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff.  Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46.  In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but "must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted).  Thus, the "[f]actual allegations must be enough to raise a right to relief above the

speculative level," *id.* (citations omitted), to one that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E. I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, adopted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. *Id.*

**B.    Motion for Summary Judgment**

When a motion to dismiss is accompanied by affidavits, exhibits and other documents, the motion will be construed as a motion for summary judgment. Under the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying the standard for summary judgment, the Court must review all of the evidence "in the light most favorable to the nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In <u>Celotex</u>, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. <u>Celotex</u> at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." <u>Matsushita Electric Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. *Id.* This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." <u>Anderson</u> at 256. The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment. *Id.* at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." <u>Matsushita</u>, at 587 (citation omitted).

## IV.   <u>Analysis</u>

At the outset, it is important to note that "however inartfully pleaded, [a *pro se* document] must be held to less stringent standards than formal pleadings drafted by lawyers. . . ." <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976)(internal quotations omitted).

### A.   <u>The Plaintiff's Motion for Extension of Time to File a Response</u>

On May 20, 2010, the defendants filed their motion to dismiss. [Dckt. 24] Pursuant to the <u>Roseboro</u> Notice issued on June 1, 2010 [Dckt. 26], the plaintiff had until June 29, 2010 to timely file a response to the defendants' motion. The plaintiff filed his response on July 1, 2010. [Dckt. 33]

Fed.R.Civ.P. 6 provides that "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party

failed to act because of excusable neglect." Here, the petitioner has provided several reasons as to why he was unable to timely file his response to the defendant's motion to dismiss. In particular, he states that he was transferred between facilities and had some difficulty securing legal assistance in the interim.[4] [Dckt. 28 at 1-2]

With all due respect to the defendants, these reasons are material to the plaintiff's request, especially given the plaintiff's *pro se* status. The plaintiff is unschooled in the law. He does not seek time for "somebody else to write a response for him." Instead, he seeks the time necessary to find someone more familiar with the law and legal principles to help him comprehend the defendants' arguments and to file an appropriate legal response. Moreover, the plaintiff's response to the defendants' motion could be crucial to the continued prosecution of his case. It is not a simple motion that can be written in a matter of minutes. Accordingly, the undersigned finds that the plaintiff has shown good cause to extend his time to respond to the defendants' motion to dismiss. Therefore, the motion should be granted, and the response filed on July 1, 2010, deemed timely and given full consideration by the Court.

## B.  The Defendant's Motion to Dismiss

As a preliminary matter, because the defendants' motion to dismiss is accompanied by affidavits and other documents, the undersigned recommends that the motion be construed as a motion for summary judgment and reviewed accordingly.

In general, the Eighth Amendment prohibits "cruel and unusual punishment." <u>Farmer v. Brennan</u>, 511 U.S. 825 (1994). To comply with the Eighth Amendment, prison punishment must

---

[4]The plaintiff also asserts that he should be entitled to discovery prior to responding to the defendants' motion. However, for reasons set forth more fully herein, the undersigned finds that argument moot.

comport with "the evolving standards of decency that mark the progress of a maturing society." Estelle v. Gamble, 429 U.S. at 102. "A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. at 837.

Moreover, while courts should give deference to a jail official's determination of what measures are necessary to maintain discipline and security, "the unnecessary and wanton infliction of pain" constitutes cruel and unusual punishment which is prohibited by the Eighth Amendment. Whitley v. Albers, 475 U.S. 312 , 321-22 (1986). In order for a plaintiff to prove a claim of excessive force, the plaintiff must first establish that "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." Norman v. Taylor, 25 F.3d at 1262 (quoting Hudson v. McMillian, 503 U.S. 1, 8 (1992)). Second, the plaintiff must show that the prison officials inflicted unnecessary and wanton pain and suffering. Hudson, 503 U.S. at 6; Williams v. Benjamin, 77 F. 3d 756 (4th Cir. 1996).

With regard to prison disturbances, whether unnecessary and wanton pain and suffering was inflicted "ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Whitley, 475 U.S. at 320-21. In determining whether the defendant acted maliciously and sadistically, the following factors should be balanced: (1) "the need for application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) "the extent of the injury"; (4) "the threat reasonably perceived by the responsible official;" and (5) "any efforts made to temper the severity of a forceful

14

response." *Id.* at 321; see also Williams, 77 F. 3d at 762.

As noted by the defendants in their motion, the standard in the Fourth Circuit used to be that, "absent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is *de minimis*." Norman, 25 F.3d at 1263.[5] In other words, a *de minimis* injury reveals that *de minimis* force was used. *Id.* at 1262. However, earlier this year, the Supreme Court specifically overruled the Fourth Circuit's *de minimis* injury exception in Wilkins v. Gaddy, ___ U.S. ___, 130 S.Ct. 1175 (2010).[6] In Wilkins, the Supreme Court specifically rejected Norman's finding that an excessive force claim may be dismissed solely on the basis of the *de minimis* nature of the resulting injury. *Id.* at 1177-78. Instead, the Supreme Court made it clear that the core judicial inquiry in an excessive force claim is not "whether a certain quantum of injury was sustained, but rather, whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 1178 (quoting Hudson v. McMillen, 503 U.S. 1, 7 (1992) (internal quotations omitted)). In other words, "[w]here the force applied is excessive . . . , a constitutional claim may survive summary dismissal even if the resulting injury is *de minimis*." Hill v. O'Brien, 2010 WL 2748807 *1 (4th Cir. July 12, 2010) (citing Wilkins at 1180)).

Thus, although the extent of the plaintiff's injury is a factor to consider, it is not a threshold

---

[5]In Norman, a jail officer began swinging his cell keys in the direction of the prisoner's face when the prisoner became disruptive. The prisoner asserted that he put his hands up to cover his face, and the keys hit his  right thumb causing his right hand to swell. The Court ruled that the prisoner sustained *de minimis* injuries proving that *de minimis* force was used.

[6]The Court notes that Wilkins was decided on February 22, 2010, well before the defendants motion to dismiss was filed. Thus, Wilkins was the applicable law at the time the defendants' motion was filed and their reliance on Norman is misplaced at best.

requirement for proving the plaintiff's Eighth Amendment claim in this case and the defendants are not entitled judgment as a matter of law based solely on the alleged *de minimis* nature of the plaintiff's injury. The Court must instead look at whether the force used in this case was "applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." See Hudson v. McMillen, 503 U.S. at 7.

According to the affidavits of the defendants, during the shakedown of the plaintiff's cell on October 23, 2009, the plaintiff began cursing at the officers. [Dckt. 25, Ex. F at ¶¶ 1-2. (Affidavit of Paul Kuhn)] Defendant Paul Kuhn therefore asked the plaintiff to step into the hallway. *Id.* at ¶ 2. The plaintiff ignored Officer Kuhn's request and continued to curse at the officers. *Id.* Officer Kuhn then had to escort the plaintiff into the hallway with a hand upon the plaintiff's arm. *Id.* Although the plaintiff was instructed to stand against the wall, he began to walk away instead. *Id.*

With his hands, Officer Kuhn then directed the plaintiff to stand against the wall. *Id.* at ¶ 3. The plaintiff failed to comply and began struggling. *Id.* He also attempted to turn away from the wall while Officer Kuhn tried to place him against the wall for security reasons. *Id.*

As the plaintiff became increasingly noncompliant and as his physical struggles escalated, Officer Kuhn instructed the plaintiff to go to his knees. *Id.* at ¶ 4. Officer Kuhn denies that he pulled the plaintiff's pants down, struck, punched, or kicked the plaintiff. *Id.* at ¶¶ 4-5. Furthermore, Officer Kuhn asserts that no other officer struck, punched or kicked the plaintiff, nor did he or any other officer curse at the plaintiff or call him names. *Id.* ¶ 5. No pepper spray was used. *Id.*

The affidavits of Case Manager Rustemeyer, Lt. Simonton and Correctional Officer Henthorne support Officer Kuhn's version of the incident. [Dckt. 25 at Ex. B, C & E]

The plaintiff's affidavit, however, tells another story. In his affidavit, the plaintiff concedes

that he commented about his shower shoes being placed on his bed during the shakedown. [Dckt. 33, Ex. A at ¶ 1 (Affidavit of David Wheeler)] Nonetheless, the plaintiff contends that this statement was made to one of his cell mates and not at the officers. *Id.* Moreover, he asserts that he did not curse at the officers. *Id.* at ¶ 6. Instead, Officer Kuhn merely overheard the plaintiff's comment to his cell mate, and as a result, Officer Kuhn grabbed the plaintiff's arm and escorted him into the hallway where the plaintiff was surrounded by five other officers. *Id.* at ¶ 2.

The plaintiff asserts that Officer Kuhn and the other officers then became physically and verbally abusive. *Id.* at ¶ 3. Specifically, the plaintiff asserts that the officers began yelling at him and Kuhn, with the help of the other officers, shoved him against the wall and repeatedly slammed his forehead against the wall. *Id.* They also pulled the plaintiff's pants and underwear below his buttocks and yanked them back up in a forceful manner. *Id.* The plaintiff asserts that one officer shoved against the plaintiff's right shoulder with all of the officer's strength and weight. *Id.* Another officer allegedly pushed against the plaintiff's right knee, forcing it into the opposite direction as his shoulder. *Id.* It was not until the plaintiff stated: "I get it. I get it." that the physical abuse stopped. *Id.* at ¶ 4. The plaintiff asserts that at no time did he resist the officers or ignore their instructions. *Id.* at ¶ 5.

As noted above, the core inquiry that the Court must make is whether the force used against the plaintiff in this case was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the purpose of causing harm. <u>Whitley v. Albers</u>, 475 U.S. at 320-21. To do so, the Court must balance, (1) the need for application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury; (4) the threat reasonably perceived by the responsible official; and (5) any efforts made to temper the severity of a forceful

response.  *Id.* at 321.  Viewing the facts in the light most favorable to the plaintiff, there exist genuine issues of material fact with regard to each and every one of the factors that the Court must weigh to determine whether excessive force was used in this case.  The only facts not in dispute are that on October 23, 2009, the defendants conducted a shakedown of the plaintiff's cell.  During the shakedown, one of the corrections officers placed the plaintiff's shower shoes on his bed.  The plaintiff became upset and made a comment.  At this time, Officer Paul Kuhn escorted the plaintiff from his cell into the hallway and asked him to stand against the wall.

Given only the undisputed facts, it does not appear that the officers were under any perceivable threat or that any further use of force was necessary.  However, if the plaintiff was cursing the officers, if he was struggling and resisting, if he attempted to walk away and if lifted his foot in a manner that would have lead the officers to believe that he intended to kick, flee or otherwise seek an advantage, the officers may have reasonably perceived a threat and the use of some force may have been necessary.  Whether all of these circumstances occurred, however, is in dispute.

Additionally, the amount of force actually used is also in dispute.  The defendants contend that Officer Paul Kuhn is the only officer who touched the plaintiff during this encounter.  The plaintiff, on the other hand, asserts that he was surrounded by five other officers who all physically and verbally assaulted him.  Therefore, the relationship between the need for force and the amount of force that was used is clearly in dispute.

As to the extent of the plaintiff's injury, it does not appear as if the plaintiff suffered more than *de minimis* injuries.  Nonetheless, the extent of the plaintiff's injury is not entirely clear and regardless, is only one factor that the Court must consider.  As to his injury, the plaintiff asserts that his medical records from the outside hospital will show that he was treated for more than just a

strained back muscle and shoulder. The plaintiff asserts that his medical records will show that he actually had a separated shoulder as a result of the alleged assault. Nevertheless, those records have not been made available to either the Court or the plaintiff. In addition, there appears to be a dispute as to how the plaintiff's injuries were inflicted and as to why he waited so long to seek treatment.

Given the extent of the issues still in dispute, there are simply too many questions that remain for summary judgment to be appropriate at this time. Moreover, if the facts prove to be as the plaintiff alleges, the defendants' conduct may have violated the plaintiff's constitutional rights. Turning then to the defendants' claim for qualified immunity, the undersigned finds that qualified immunity is not applicable at this time.

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The two-part test for qualified immunity is whether (1) the facts alleged "show [that] the officer['s] conduct violated a constitutional right;" and (2) the constitutional right in question was clearly established such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 201-202 (2001).

Here, the undersigned has already found that the conduct alleged in the complaint could violate the plaintiff's constitutional rights if proved. Moreover, there are material issues of fact which remain unresolved, prohibiting a grant of qualified immunity at this stage. In addition, it was clearly established on October 23, 2009, that the wanton infliction of pain such as alleged in the complaint was unlawful conduct. See Hudson v. McMillian, 503 U.S. at 5, Whitley v. Albers, 475

U.S. at 319. Accordingly, the defendants are not entitled to dismissal at this stage of the proceedings based on the defense of qualified immunity.

Finally, as to the defendants' argument that Lt. Simonton, Officer Jason Kuhn, Officer VanMeter and Officer Henthorne should be dismissed because the plaintiff has conceded that he cannot identify which of those defendants "placed [their] hands on him," the undersigned finds this argument to be without merit. [Dckt. 25 at 6] The plaintiff has stated that these defendants were present at the time Officer Paul Kuhn allegedly used excessive force against him. In addition, the plaintiff alleges that these defendants surrounded him and began verbally and physically attacking him. There exists a genuine issue of material fact as to the extent of these officers' involvement with the alleged use of force. The fact that the plaintiff cannot specify which defendant did what to him is exactly the kind of issue that is appropriate for discovery. Thus, the undersigned finds that summary dismissal of these defendants at this time is not appropriate.

## C. The Plaintiff's Motion for Discovery

In his motion for discovery, the plaintiff has requested discovery pursuant to Fed.R.Civ.P. 26(a)(3). Based on his request, the undersigned does not believe that the plaintiff is seeking to compel discovery. Rather, the undersigned believes that the plaintiff merely seeks permission to conduct discovery.

Fed.R.Civ.P. 26(f) states that, "[e]xcept in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B) or when the court orders otherwise, the parties must confer as soon as practicable. . . ." The federal rules provide that "an action brought without an attorney by a person in the custody of the United States, a state, or a state subdivision" is exempt from initial disclosure. Fed.R.Civ.P. 26(a)(1)(B)(iv). Here, as the record shows, the plaintiff is in the custody of the state

of West Virginia, and thus the parties are exempt from a rule 26(f) discovery conference.

Moreover, pursuant to LR PL P 7, "[n]o discovery pursuant to Rules 26 through 37 of the Federal Rules of Civil Procedure shall be conducted with respect to petitions, motions, applications, and complaints filed under these provisions without leave of the Court."[7]  Therefore, the plaintiff is not entitled to conduct discovery until directed to do so by the Court.  In this case, there has been no Order issued by the Court which permits the parties to conduct discovery.  However, because the undersigned recommends within this Opinion/Report and Recommendation that the defendants' motion to dismiss be denied, he also recommends that the plaintiff's motion for permission to conduct discovery be granted, but only to the extent that upon the denial of the defendants' motion, the Court issue a scheduling order setting forth discovery and other relevant deadlines.

**D.**   **The Defendants' Motion for Protective Order**

In light of the above findings and recommendations, the undersigned finds that the defendants' Motion for a Protective Order is moot.  The Court has not yet permitted the parties to conduct discovery, and thus there is no reason to issue a protective order at this time.  Nevertheless, the defendants may renew their motion after the issuance of a scheduling order to the extent that such a motion is applicable and necessary.

**V.**   **Recommendation**

For the reasons stated, the undersigned recommends:

(1) the defendants' Motion to Dismiss [Dckt. 24] be construed as a Motion for Summary

---

[7]The Federal Rules of Civil Procedure allow a court to limit the amount and timing of discovery that the parties may otherwise be permitted to conduct.  See Fed.R.Civ.P 26(b)(1) ("Unless otherwise *limited by court order* . . . parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense.").

Judgment and **DENIED**.

(2) the plaintiff's Motion for Extension of Time to File a Response [Dckt. 28] be **GRANTED to the extent that** the response filed on July 1, 2010, be deemed timely filed.

(3) the plaintiff's Motion for Discovery [Dckt. 29] be **GRANTED to the extent** that he seeks permission to conduct discovery and that the discovery deadlines and other relevant matters be scheduled pursuant to a separate order.

(4) the defendants' Motion for a Protective Order [Dckt. 32] be **DENIED without prejudice**.

Within **fourteen (14) days** after being served with a copy of this Opinion/Report and Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections.  A copy of any objections shall also be submitted to the Honorable Robert E. Maxwell, United States District Judge.  Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation.  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk  is directed to mail a copy of this Opinion/Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record via electronic means.

DATED: September 1, 2010.

*John S. Kaull*

JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE